IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASTI RAO, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) 14 C 66 |
| | ) |
| CHRISTOPHER GONDI et al., | ) Judge Virginia M. Kendall |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Jasti Rao filed a complaint alleging eight counts against Dr. Christopher Gondi, Dr. Sarah Rusch, Dr. Dimitri Azar, and the Board of Trustees of the University of Illinois. Rusch, Azar and Gondi are all employees of the University. Specifically, Rao asserts claims against Rusch and Azar for race discrimination and retaliation under the 42 U.SC. § 1981(Counts III and IV); claims against Rusch and Gondi for tortious interference with business relations (Count V); claims against Gondi for defamation per se (Count VI); claims against Dr. Rusch for retaliation under the Illinois State Officials and Employee Ethics Act, 5 ILCS 430/15-10 (Count VII); and claims against the University for race discrimination under the Illinois Civil Rights Act of 2003, 740 ILCS 23/5 et seq. Counts I and II are not at issue. The Court grants the defendants' motion to dismiss Counts III, IV, V, and VI and denies the motion to dismiss Counts VII and VIII.

## BACKGROUND

The Court treats the following allegations from the Amended Complaint as true for the purposes of this motion. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

The University hired Rao, a native of India and a U.S. citizen, where he worked from January 2001 to March 2013 as a cancer researcher and professor. (Am. Comp. ¶ 1). Rao began working as the Professor and Director of Cancer Research, Department of Biomedical Therapeutic Sciences, then promoted to Head of the Department, then to Senior Associate Dean for Research at the University. (*Id.* ¶ 13.)

Rusch was the Regional Dean for the University of Illinois College of Medicine at Peoria. (*Id.* ¶ 8). In May 2012, Rusch launched an investigation into allegations of plagiarism in Rao's lab. (*Id.* ¶ 19). Rusch enlisted Azar, the Dean of the College of Medicine at Chicago, as the head of the internal investigative team. (*Id.* ¶¶ 9 & 22). Rusch did not initiate investigations of plagiarism into non-Indian professors even though similar allegations had been made against them. (*Id.* ¶ 21).

In October 2012, the University asked Rao for the names of any other University officials whose publications might also contain errors. Rao gave the University the same report he gave to Rusch in July 2012. As requested, Rao also pointed out errors in publications by other University officials. He also reported a Health Insurance Portability and Accountability Act of 1996 violation made by Rusch. Also in 2012, Dr. Rao filed a discrimination claim with the EEOC claiming the University discriminated against he and other foreign born personnel; the EEOC declined to investigate and informed him he could file a civil suit under 42 U.S.C. 2000e *et seq*. After this, Dr. Rao also claims the University intensified its investigation into his alleged misconduct. (Dkt. No. 20-2; Dkt. No. 20 ¶ 26-27).

Dr. Rao learned the University was also investigating allegations that he accepted bribes from other researchers in his lab in exchange for covering up errors in their publications. (*Id.* ¶ 25). The University claimed that the basis of the allegation was a video recording of a

2

conversation between him and Gondi, who at the time was also Rao's employee. (*Id.* ¶ 7). The video allegedly showed Gondi giving money to Rao for a bribe. The University obtained a bank record reflecting a transaction in the same amount that was given to Rao in the video. (*Id.* ¶ 29). Rao alleges the University misunderstood the statements made in the video and explained Dr. Gondi was paying him back for a loan. (*Id.* ¶ 25). In addition to the initial investigation, the University launched a second investigation, also led by Azar, as a result of a list of allegations of professional misconduct sent anonymously to Rusch. (*Id.* ¶¶ 22, 40). As a result of the findings in both investigations, on March 21, 2013 the University informed Dr. Rao that if he did not resign by March 25, 2013 his employment would be terminated. The University then revoked Dr. Rao's access to the University's email system; confiscated his keys to his office and lab, his University identification card, and his computers at work and in his home; relieved him of his duties; and escorted him off campus. (*Id.* ¶¶ 41-42). On March 25, 2013 Dr. Rao unwillingly signed a letter of resignation. (*Id.* ¶ 45).

Following his resignation, Dr. Rao claims Dr. Gondi continued to make false allegations that Dr. Rao solicited bribes from his employees. He further alleges Dr. Gondi stands to gain from Dr. Rao resigning, since the University reassigned very profitable and prestigious grants earned by Dr. Rao to Dr. Gondi and others. (*Id.* ¶¶ 30, 47).

## **STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *Yeftich*, 722 F.3d at 915. To state a claim upon which relief can be granted, a compliant must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must

allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 678.

## **DISCUSSION**

### A. Counts III and IV

Count III alleges discrimination under 42 U.S.C. § 1981 and Count IV alleges retaliation under § 1981 against Rusch and Azar. The Court considers both § 1981 claims together because they should both be dismissed for the same reason. Title 42 section 1983 is the exclusive remedy for violations of § 1981 against state actors. *Campbell v. Forest Preserve Dist. of Cook County*, 752 F.3d 665, 671 (7th Cir. 2014). Rao concedes that the defendants are state actors and *Campbell* requires the dismissal of his § 1981 claims. Thus, the Court dismisses Counts III and IV with prejudice.

### B. Counts V and VI

Counts V and VI allege violations of Illinois tort law against Rausch and Gondi, nominally in their individual capacities. Rausch and Gondi argue that this Court lacks subject matter jurisdiction over these claims because they are actually claims against the state which Rao must bring in the Illinois Court of Claims. *See Rodriguez v. Cook County, Ill.*, 664 F.3d 627, 631 (7th Cir. 2011); 745 ILCS 5/1. A claim styled against an individual is actually against the state for this purpose if the defendant (1) acted within the scope of his or her authority; (2) "breached a duty held uniquely by State employees holding the job at issue" as opposed to "a duty owed by all citizens"; and (3) engaged in matters ordinarily within his or her normal and official functions. *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009); *see also Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). The Illinois State Lawsuit Immunity Act provides

that the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act which vests jurisdiction over state tort claims against the state in the Illinois Court of Claims. *See* 705 ILCS 505/8. These state immunity rules apply to state law claims in federal court. *See Magdziak v. Byrd,* 96 F.3d 1045, 1048 (7th Cir.1996). These principles apply to both Counts V and VI.

      1.    Count V

Count V alleges tortious interference with business relations against Rusch and Gondi as individuals. Rusch and Gondi do not challenge the sufficiency of the factual allegations, but argue that the complaint fails to state a claim upon which the Court can grant relief because the claims are within the exclusive jurisdiction of the Illinois Court of Claims. The Court finds that the claims are more appropriately classified as claims against the state under the three factor test described above and that the Court therefore lacks jurisdiction.

      a.    Scope of Employment

The allegations against both Rush and Gondi include only actions within the scopes of their employment. The factual underpinnings of the amended complaint allege that Gondi reported what to the University that Rao had solicited bribes from him. (Am. Compl. ¶¶ 29-30). Nothing in the complaint explains why reporting misconduct by a superior to the employer constitutes action outside the scope of employment. The only allegation in support of the notion that Gondi and Rusch acted outside the scopes of their employment is that they "acted in furtherance of personal interests and against the interests of the University when they intentionally interfered with Dr. Rao's business relations with the University." (Am. Compl. ¶ 77). No facts in the complaint substantiate or explain why this is the case. While the Court accepts as true the contents of the complaint for this motion to dismiss, the Court need not accept

as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The amended complaint's statement that Rusch and Gondi acted against University interests does nothing more than state the elements necessary to bring Count V into this Court's jurisdiction. The Court finds, therefore, that the amended complaint does not contain allegations that Rusch and Gondi acted outside the scopes of their employment.

This conclusion is bolstered with respect to Rusch by the fact that Rao concedes that the § 1981 claims in Counts III and IV are barred because Rusch *was* acting within the scope of her employment. The factual basis for the § 1981 discrimination claim is similar to the allegations in Counts V, namely that Rusch's actions "constituted interference with Rao's employment relationship." The fact that Rao named Rusch in her "official capacity" in Counts III and IV, but as individuals in Counts V and VI is immaterial; suits nominally against individuals constitute suits against the state when certain conditions are met regardless of how a complaint classifies them. *See Turpin*, 567 at 883.[1]

      b.      Duty owed solely because of employment

---

[1] Though not necessary to the Court's holding, the Court also takes judicial notice of the content of a parallel lawsuit that Rao has filed in the Illinois Court of Claims against the University. That complaint alleges that the University liable for the same conduct that the amended complaint in this case alleges against Rusch individually. (Dkt. No. 33-1 p. 3) ("Because Dr. Rusch is a University Employee and acted within the scope of her employment, the University could be held liable for attempts to interfere with Dr. Rao's business relations"). *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (judicial notice of matters of public record appropriate in considering a motion to dismiss). There, Rao explained that The purpose of allowing judicial notice of such facts and documents "is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). "[W]ere it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Next, the Court finds that the duty allegedly breached was one that Rush and Gondi owed solely due to their employment with University. The amended complaint alleges that Rusch and Gondi induced the University to investigate and eventually to dismiss Rao. When defendants are capable of causing the alleged harm only by virtue of their employment, this prong is satisfied. *See Turpin*, 567 F.3d at 883 (duty was unique to state employment when alleged harm was possible "only because [the defendants] were employed [by the state]"). It is immaterial that all people have the duty not to engage in tortious interference with business relations. "The fact that [the Court] can find a broader parallel duty held by all citizens . . . doesn't change a thing. If courts were to ignore the specific duty in favor of its more general cousin, the Court of Claims would be a quiet place indeed." *Id*. Thus, the Court finds that the amended complaint alleges breaches of a duty uniquely held by state employees holding the jobs at issue.

c. Matters ordinarily within official duties

Finally, the Court finds that the amended complaint concerns matters ordinarily within the defendants' official duties. The amended complaint contains no specific allegation that Rusch and Gondi's actions were not within their normal duties. Instead, it alleges that Rusch and Gondi falsely reported misconduct by a colleague to the University. Rao argues that the information that Rusch and Gondi provided to the University was allegedly false, reporting that information was not within their official duties. Allegations that solely work-related accusations by coworkers were false does not, without more, bring those statements outside of normal official duties. *See Cortright v. Doyle*, 898 N.E.2d 1153, 1160 (Ill. App. Ct. 2008) (suit against individual was within official duties when "plaintiff failed to plead any false personal accusations made the supervisors that did not relate solely to her job"). Here, all of the allegedly false accusations that Rusch and Gondi made were solely related to Rao's job performance.

7

Thus, the Court finds that the allegations against Rusch and Gondi in Count V concern matters within their normal duties.

In his response to Rusch and Gondi's motions to dismiss, Rao supplements his complaint to add allegations that the University and "presumably" Rusch and Gondi forwarded the information initially reported to the University to the U.S. Attorney's Office, arguing that so doing took their actions outside their official duties. (Dkt. No. 37 p. 10). While the Court may consider these elaborations on the complaint so long as they are consistent the complaint, *Geinosky v. City of Chi*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), the additional allegations do not change the Court's conclusion. Rao's response is clear that it was the University's decision to report the allegations to the U.S. Attorney's Office; to the extent that Rusch or Gondi cooperated with the University's decision, they did so at the direction of their employer and within the scope of their employment and official duties.

Because Count V is actually a claim against the state, the Court dismisses without prejudice Count V for lack of subject matter jurisdiction.

2. Count VI

Count VI alleges defamation per se against Gondi, again nominally in his individual capacity. The analysis above applies with equal force to Count VI and the Court dismisses Count VI without prejudice for lack of subject matter jurisdiction.[2]

**C.    Count VII**

---

[2] While again not necessary to the Court's holding, the Court takes judicial notice of the complaint that Rao has filed in the Illinois Court of Claims against the University. That complaint alleges that the University is liable for the same conduct that the amended complaint in this case alleges against Gondi individually. (Dkt. No. 33-1 p. 3) ("Because Dr. Gondi is a University Employee and acted within the scope of his employment, the University could be held liable for his defamatory statements, which form the basis of this claim.").

Count VII of the amended complaint alleges that Rusch violated the State Officials and Employee Ethics Act, 5 ILCS 430/15-10. Specifically, the amended complaint alleges that Rusch retaliated against Rao for engaging in statutorily protected activity when she escalated the investigation into Rao that ultimately led to his termination. Rusch argues that the Ethics Act protects against only against enumerated retaliatory acts and that "escalating" an investigation is not one of those enumerated acts. The Ethics Act prohibits "the reprimand, discharge, suspension, demotion, denial of promotion or transfer, or change in the terms or conditions of employment" in retaliation for certain protected acts. Rao responds that escalating the investigation that eventually led to his discharge should constitute discharge under the statute.

The Court finds that Rao has pled facts sufficient to state a claim against Rusch for violation of the Ethics Act. Illinois caselaw construing the Ethics Act is sparse. *See Kilquist v. Friedenauer*, No. 5-12-0435, 2013 IL App (5th) 120435-U (Ill. App. Ct. 2013) ("there are few cases in Illinois involving the whistleblower provisions of the [Ethics Act]"). Nevertheless, the amended complaint alleges that Rusch was Rao's superior and that she escalated the investigation against him in retaliation for engaging in protected acts. At the very least, the intensified investigation could constitute a reprimand or change in condition of employment under the Ethics Act. As used in the Ethics Act, the phrase "terms and conditions of employment" means "something provided by an employer which intimately and directly affects the work and welfare of employees." *Kilquist*, 2013 IL App (5th) 120435-U at *6 (internal quotation omitted). The allegation here that the investigation was intensified in retaliation for protected acts is not "too subjective" to meet the statutory definition. *See id.* (declining to find a change in terms and conditions of employment when plaintiffs pled only a subjective fear of

discharge). Therefore, the Court finds that the content of the amended complaint is sufficient to state a claim under the Ethics Act.

Thus, Rusch's motion to dismiss Count VII is denied.

### D.    Count VIII

Count VIII alleges discrimination on the basis of national origin against the University in violation of the Illinois Civil Rights Act, 740 ILCS 23/5. The ICRA provides that units of state, county, and local government shall not:

> (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or

> (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender.

The University does not attack the factual sufficiency of Count VIII, but instead reads the ICRA to permit claims based on disparate impact theories, but not disparate treatment theories. None of the authority that the University cites requires this conclusion. Moreover, it is at odds with the plain language of the statute. Subsection (1) of the ICRA, broadly prohibits discrimination by units of state and local government in Illinois on the basis of race, color, national origin or gender. That subsection is linked to subsection (2) by a disjunctive "or" so the disparate impact cause of action under (2) should not preclude a discrimination claim under (1).

The Court is likewise unpersuaded by the University's argument that Rao has insufficiently pleaded that the discrimination was part of a program or activity. First, the University cites no authority for the proposition that employment by a state entity is not a "program or activity" under the statute. Admittedly, the Illinois case law construing the "program or activity" language of the ICRA is also sparse. However, the plain language of the

statute is intentionally broad. The Court finds that tenured employment with the University constituted a program or activity under which the ICRA prohibits discrimination based on national origin. Thus, the University's motion to dismiss Count VIII is denied.

## CONCLUSION

For the reasons stated herein, Counts III and IV are dismissed with prejudice and Counts V and VI are dismissed without prejudice. The Court denies the defendants' motion with respect to Counts VII and VIII.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 23, 2014

11