IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASTI RAO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 14 C 66 |
| | ) | |
| CHRISTOPHER GONDI et al., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Jasti Rao filed a second amended complaint against Defendants Dr. Sarah Rusch, Dr. Dimitri Azar, and the Board of Trustees of the University of Illinois that stems from the Defendants' investigation into potential academic misconduct by Rao and Rao's resignation from the University of Illinois College of Medicine at Peoria. The Court dismissed Counts III-VI of the Complaint when it granted the Defendants' motion to dismiss in part. (Dkt. No. 62.) Of the remaining counts, Rao asserts claims against the University for race discrimination and retaliation under the Civil Rights Act of 1964 (Counts I and II); a claim against Dr. Rusch for retaliation under the Illinois State Officials and Employee Ethics Act, 5 ILCS 430/15-10 (Count VII); a claim against the University for race discrimination under the Illinois Civil Rights Act of 2003, 740 ILCS 23/5 et seq (Count VIII); and claims against Rusch and Azar for denial of due process and equal protection under 42 U.S.C. § 1983 (Counts IX and X). Defendants Rusch and Azar move to dismiss Counts IX and X of the Second Amended Complaint. (Dkt. No. 100.) For the reasons stated below, the Court denies Rusch and Azar's motion to dismiss Counts IX and X. (Dkt. No. 100.)

1

## BACKGROUND

The Court assumes familiarity with the factual allegations as provided in its motion to dismiss order.  *See Rao v. Gondi*, 2014 WL 5423441, 14 C 66 at *1-2 (N.D. Ill. Oct. 23, 2014). In summary, Rao is a native of India and U.S. citizen who worked at the University from January 2001 to March 2013 as a cancer researcher and professor.  (Dkt. No. 86 at ¶1.)  He was awarded tenure in 2002.  *Id.* at ¶13.  Rusch is the Regional Dean of the University of Illinois College of Medicine at Peoria.  *Id.* at ¶8.  Azar is the Dean of the University of Illinois College of Medicine at Chicago.  *Id.* at ¶9.  In July 2012, Rusch informed Rao that she was initiating an investigation into allegations of plagiarism.  *Id.* at ¶19.  Rusch and the University did not investigate two other University officials who are not of Indian origin when similar claims of plagiarism were made against them.  *Id.* at ¶21.

On March 21, 2013, the University told Rao that if he did not resign by 9 a.m. on March 25, 2013, the University would terminate his employment and the plagiarism allegations against him would likely become public.  *Id.* at ¶41.  The University told Rao that investigations against him would cease—including providing information to the U.S. Attorney's Office—if he resigned by that deadline.  *Id.*  At time, the University also stripped Rao of his titles and duties, terminated his access to the University email system, took back his keys to his office and lab, and confiscated his University ID card.  *Id.* at ¶42.  University security escorted Rao off University property to his home, and took possession of his computer and remaining University property. *Id.* at ¶43.  Rao signed a letter of resignation on March 25. 2013.  *Id.* at ¶45.

## LEGAL STANDARD

At the motion to dismiss stage, the Court accepts as true all factual allegations in the Complaint and construes all reasonable inferences in favor of the plaintiff.  *Fortres Grand Corp.*

*v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.       Count IX States a Claim for a Due Process Violation

In their motion to dismiss, Rusch and Azar assert that Rao fails to state a claim for violation of his procedural due process rights under Section 1983 because he has failed to demonstrate that he had a protected property interest in his employment as a tenured professor. (Dkt. No. 101 at 3.) Rusch and Azar further point to the fact that the University did not terminate Rao, but rather Rao resigned, as dooming his procedural due process claim. *Id.* at 4. They argue that the second amended complaint does not state a claim for constructive discharge because Rao chose to resign rather than wait for statutory termination proceedings that his tenured status would have triggered. *Id.* at 4-5. Rusch and Azar claim that Rao has not pleaded sufficient facts to prove coerced resignation either as the alleged threats made to Rao do not rise to the level of coerced resignation. (Dkt. No. 110 at 6-7.) In response, Rao contends that because he has alleged that he was tenured, he has sufficiently pleaded a protected property interest. (Dkt. No. 109 at 7.) He claims that the second amended complaint properly alleges constructive discharge under Seventh Circuit precedent because the Defendants conducted a

"sham investigation" of Rao that lead to his resignation. *Id.* at 2-5. Rao further purports to have

stated a claim for coerced resignation because the allegations in the second amended complaint

"go well beyond" what the Seventh Circuit has established is coerced resignation. *Id.* at 7.

"To demonstrate a procedural due process violation of a property right, the plaintiff must

establish that there is (1) a cognizable property interest; (2) a deprivation of that property

interest; and (3) a denial of due process. Accordingly, a plaintiff asserting a procedural due

process claim must have a protected property interest in that which [he] claims to have been

denied without due process." *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th

Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)). "A property interest in

continued employment can be created in one of two ways, 1) by an independent source such as

state law securing certain benefits; or 2) by a clearly implied promise of continued employment.

Due-process claims in the context of public employment require an entitlement to continued

employment; more specifically, the plaintiff must have a legitimate claim of entitlement not to

lose a valuable governmental benefit except for cause." *Palka v. Shelton*, 623 F.3d 447, 452 (7th

Cir. 2010) (internal quotations omitted). The Seventh Circuit has found that tenured faculty

members have a property interest in their jobs. *See Levenstein v. Salafsky*, 164 F.3d 345, 351

(7th Cir. 1998) ("It is undisputed that, as a tenured faculty member, he had a property interest in

his job."); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The

tenured public employee is entitled to oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the story.").

Rao alleges that he was a tenured professor at the University, and therefore he has alleged

sufficient facts to state a claim for having a property interest in his position. (Dkt. No. 86 at

¶13.)

**A.** **Constructive Discharge**

No due process violation occurs where a public employee voluntarily resigns, but a resignation is deemed involuntary in two circumstances: constructive discharge and coerced resignation. *See Palka*, 623 F.3d at 453 ("A public employee who voluntarily resigns cannot complain about a lack of due process, but an 'involuntary' resignation may in certain circumstances form the basis of a due-process claim. Two types of involuntary resignation may qualify-constructive discharge and coerced resignation." (citation omitted)). Constructive discharge occurs when from an objective standpoint, the working conditions "become so intolerable that [the plaintiff's] resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 130 (2004). An employee is constructively discharged where an employer's conduct communicates to a reasonable employee that she will be terminated and the employee resigns. *See Swearnigen-El v. Cook County Sherriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010). But the "the prospect of being fired at the conclusion of an extended process, without more, does not meet this standard." *Id.* (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333-34 (7th Cir. 2004)).

Rusch and Azar argue that the second amended complaint does not allege sufficient facts to plead constructive discharge because the University gave him the choice between resigning and facing termination. (Dkt. No. 101 at 4.) They submit that this situation does not rise to the level of constructive discharge under Seventh Circuit law because Rao was a tenured employee who would have been entitled to procedures under Illinois law if he had chosen to be terminated instead of resigning. *Id.* at 4-5. Rao, meanwhile, believes that the second amended complaint states a claim for constructive discharge as it alleges that Rao was stripped of his titles, access to the University, and any property related to his job while given no indication that he would be

allowed to return. (Dkt. No. 109 at 2-3.) Rao likens his case to *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998) where the Seventh Circuit held that the plaintiff adequately alleged constructive discharge at the motion to dismiss stage by claiming that the defendant conducted a sham investigation and suspended him indefinitely. Rao analogizes *Levenstein* to this case in that the second amended complaint also alleges a sham investigation into the allegations against him as it states that Rusch initiated the investigation based on anonymous unfounded complaints against Rao and the appointment of the investigatory panel violated University policy. (Dkt. No. 109 at 5.)

"A plaintiff who can introduce evidence that the decision has already been made and any hearing would be a sham is entitled to go forward with a procedural due process claim." *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir. 1999) (citing *Levenstein*, 164 F.3d at 351-52). The second amended complaint alleges that the University's investigation into Rao's purported plagiarism was a sham in that Rusch initiated the investigation based on anonymous unfounded allegations against Rao and Rusch and the University investigation ignored similar claims of misconduct made by Rao against Azar and Garcia. (Dkt. No. 86 at ¶¶20-21, 40.) It also claims that the panel that conducted the University investigation had conflicts of interest, performed two separate investigations into the allegations against Rao, was allowed numerous extensions, and did not give Rao an opportunity to respond. *Id.* at ¶¶22-24, 36-37, 40.) Viewing these allegations in the light most favorable to Rao and accepting them as true, it is plausible that the process of the University investigation was a sham that amounted to constructive discharge. *See Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 666 (7th Cir. 2004) (acknowledging that a complaint states a claim for a due process violation where it alleges that the investigation's procedures were a sham); *Ryan*, 185 F.3d at 762; *Levenstein*, 164 F.3d at

351 (finding allegations of constructive discharge survive a motion to dismiss where complaint alleges that a "combination of the sham process the University defendants followed and his extensive suspension amounted to a constructive discharge, and that the University defendants never gave him an adequate opportunity to respond to that action.").

**B.**     **Coerced Resignation**

Even if the second amended complaint does not state a claim for constructive discharge, it pleads sufficient facts for coerced resignation, which is the second circumstance where a voluntary resignation by the plaintiff is deemed a due process violation.  "[C]oerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges."  *Palka*, 623 F.3d at 453.  The second amended complaint states that on March 21, 2013, the University informed Rao that "if he did not resign by 9 a.m. on March 25, 2013, the University would terminate his employment, and the allegations against him would likely become public."  (Dkt. No. 86 at ¶41.)  It further alleges that the University told Rao that "if he resigned, then the investigations into his conduct, which included providing information to the U.S. Attorney's Office, would stop."  *Id.*  Accepting these allegations as true and drawing all inferences in favor of Rao, it is plausible that Rao was faced with the choice of resigning or facing the severe consequences of public shaming for plagiarism and a federal investigation or federal charges.  Therefore, the Court denies Rusch and Azar's motion to dismiss Count IX because the second amended complaint states a claim for a violation of Rao's procedural due process rights resulting from constructive discharge or coerced resignation.

## II.    The Second Amended Complaint Properly Alleges that Rusch and Azar Were Personally Involved

Next, Rusch and Azar seek to dismiss Counts IX and X of the second amended complaint on the basis that it fails to properly allege that they were personally involved with the alleged due process and equal protection violations.  (Dkt. No. 101 at 5.)  Rao responds that the allegations about Rusch and Azar's participation in the sham investigation into potential plagiarism that lead to his resignation are sufficient to plead their personal involvement.  (Dkt. No. 109 at 8-9.)  In a Section 1983 claim, "a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."  *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009) (citation omitted).  "To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."  *Id.* at 463 (quotation omitted).  The second amended complaint alleges that Rusch "launched the investigation" into Rao's publications after learning of accusations of plagiarism.  (Dkt. No. 86 at ¶¶19-20.)  It claims that Rusch formed two teams to perform the investigation "under the direction of Azar."  *Id.* at ¶22.  Rusch is also alleged to have ignored Rao's allegations against Azar.  *Id.* at ¶3.  Counts IX and X claim that Rao's due process and equal protection rights were violated when he was constructively discharged through the University's sham investigation.  *Id.* at ¶¶80, 86.  When viewing the second amended complaint in the light most favorable to Rao, it alleges sufficient facts to plead that Rusch and Azar were personally involved with the investigation as it claims that Rusch initiated it and both defendants were involved in the creation of the two investigatory teams.  Moreover, it claims that Rusch selectively investigated Rao instead of Azar and Garcia, which goes toward proving that the investigation was a sham and contributed to the constructive discharge of Rao.  These factual allegations make it plausible that Rusch and Azar knew about and facilitated the allegedly sham investigation that caused Rao to be constructive discharged.

Accordingly, the Court denies Rusch and Azar's motion to dismiss Counts IX and X due to failure to plead personal involvement.[1]

## III.     Counts IX and X are Not Barred by the Statute of Limitations

Lastly, Azar argues that Counts IX and X should be dismissed against him because they are time-barred under the statute of limitations.  (Dkt. No. 101 at 7.)  They point to the fact that according to the second amended complaint, Rao resigned on March 25, 2013 but did not file his second amended complaint with the Section 1983 claims against Azar until March 26, 2015, which is more than two years later.  *Id.*  Rao counters that Counts IX and X should not be dismissed because he filed a Motion for Leave to File a Second Amended Complaint on March 20, 2015, which is the relevant date for the statute of limitations and within two years of March 25, 2013.  (Dkt. No. 109 at 9-10.)

When a complaint is challenged by a 12(b)(6) motion, "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness."  *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) (citation omitted).  A plaintiff pleads himself out of court by alleging facts that show that the statute of limitations bars relief.  *See Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense.").  In a Section 1983 claim, the Court must adopt the forum state's statute of limitations for personal injury claims.  *See Owens v. Okure*, 488 U.S. 235, 240 (1989).  In Illinois, the state of limitations for personal injury claims is two years. 735 ILCS 5/13-202; *see*

---

[1] Rusch and Azar make the additional argument that the second amended complaint should be dismissed because it alleges that those in responsible for the decision to terminate Rao's employment are located in the Northern District of Illinois and Rusch resides in Peoria, which is not in this district.  (Dkt. No. 101 at 6.)  But the allegations about Rusch's initiation of the investigation alone are sufficient to plead her personal involvement in the due process and equal protections stemming from that investigation.

*Ray v. Maher*, 662 F.3d 770, 772 (7th Cir. 2011). "In determining whether an amended complaint meets the statute-of-limitations deadline, Illinois courts look to the date plaintiffs filed their motion to amend the complaint rather than the date the trial court grants the motion and files in the pleading." *Schillinger v. Union Pacific R.Co.*, 425 F.3d 330, 334 (7th Cir. 2005). A motion for leave to amend may toll the statute of limitations "so long as it puts the opposing party on notice of the content of the amendment." *Moore v. State of Ind.*, 999 F.2d 1125, 1131 (7th Cir. 1993). Rao indeed filed a Motion for Leave to File Second Amended Complaint on March 20, 2015, which contained as an exhibit a draft of the second amended complaint that included Section 1983 claims against Azar for deprivation of Rao's due process and equal protection rights. (Dkt. No. 83.) The draft also specifically alleged that the investigation that violated Rao's constitutional rights was a sham and Azar directed Rusch to form two teams to investigate Rao. *Id.* at Ex. A, ¶¶22, 81. Azar therefore had notice on March 20, 2015 that Rao planned on asserting Counts IX and X against him because Rao's motion named these Section 1983 claims and provided factual allegations to support them. *See id.* Because March 20, 2015 is within two years of March 25, 2013, the Court denies Azar's motion to dismiss Counts IX and X for untimeliness under the statute of limitations.[2]

---

[2] Azar attempts to distinguish this case from *Schillinger* by claiming that its holding is inapplicable as it was in federal court under diversity jurisdiction while this case is before the Court on federal question jurisdiction. (Dkt. No. 110 at 10.) But the Seventh Circuit in *Schillinger* applied Illinois law, which is controlling for the statute of limitations in Section 1983 claims like Counts IX and X, and did not base its decision on its subject matter jurisdiction. Thus, the basis of federal jurisdiction is not relevant and *Schillinger* is controlling.

## <u>CONCLUSION</u>

For the reasons stated therein, the Court denies Rusch and Azar's motion to dismiss Counts IX and X.  (Dkt. No. 100.)

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:   12/30/2015