# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DR. JASTI RAO, ) | |
| ) | |
| Plaintiff, ) | Judge Virginia M. Kendall |
| ) | Magistrate Judge Susan E. Cox |
| v. ) | |
| ) | No. 14-cv-0066 |
| THE BOARD OF TRUSTEES OF THE ) | |
| UNIVERSITY OF ILLINOIS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

For the reasons discussed below, the Court orders as follows: 1) Ms. Siva Jasti must produce all documents requested in Defendants' third party subpoena on or before October 24, 2016; and 2) Defendants must produce the two investigative files of ethics investigations that were referred to outside counsel on or before October 24, 2016.

## BACKGROUND

For the purposes of this Order, the Court assumes familiarity with the background facts of the case. On September 6, 2016, the day before fact discovery closed, the parties contacted this Court to schedule a discovery conference regarding various issues on which they had reached impasse. The discovery conference was held on September 14, 2016. Prior to the discovery conference, the parties provided a joint submission on their discovery disputes on September 9, 2016. The submission raised three issues, two of which are relevant here.

The first issue involved a third-party subpoena seeking documents from the Plaintiff's wife, Ms. Siva Jasti. In particular, Defendants sought production of Ms. Jasti's correspondence with Jeff Rock (Plaintiff's former attorney), and her children (who are both attorneys). Ms. Jasti (who is represented by Plaintiff's current attorney) objected to these requests, arguing that those

1

communications were protected by the attorney-client privilege. Plaintiff posits two primary theories as to why these communications are privileged: 1) the communications are protected by the "common interest" doctrine; 2) Ms. Jasti's presence on the communications between Plaintiff and his attorneys does not destroy privilege because she was "essential to the legal representation" of Plaintiff. (Dkt. 192 at 4.)

One complicating factor is Ms. Jasti's deposition testimony. Ms. Jasti was asked at her deposition "Are you represented by your children" and unequivocally answered "No." (Dkt. 193-2 at 16:10-11.) She further testified that "when [Defendants] terminated [Plaintiff], I talked to our children. We went through whatever happened that day, we discussed with [sic] as a family, not like attorneys or anything like that." (Dkt. 193-2 at 16:18-21.) She was also asked "Were you represented by Jeff Rock at any time?" and similarly answered "No." (Dkt. 193-2 at 10:7-10.) Ms. Jasti then proceeded to testify regarding the substance of the conversations she had with Mr. Rock. (Dkt. 193-2 at 10:11-12:4.)

Second, Plaintiff sought two investigative files that were created by outside law firms who had performed internal investigations of University employees who were accused of wrongdoing. Plaintiff maintains that these files are necessary for Plaintiff to analyze the treatment of other employees who are similarly situated to him (*i.e.*, comparator employees). Defendant claims that these files are protected by the work product doctrine, and should not be produced.

A short background regarding these files is necessary to adequately understand this issue in context. The potential discovery of investigative files was first brought to this Court's attention at a discovery conference on July 11, 2016. At that conference, the parties sought clarity on the questioning that would be allowed at the upcoming deposition of Donna McNeely,

the head of the University's ethics office. This Court held that Plaintiff would be allowed to ask "about any ethics investigations that were raised to the university counsel's office for referral to an outside law firm for investigation." (Dkt. 155.) The Court also noted that any decision on the production of materials and documents related to the ethics investigations could not occur until Ms. McNeely's deposition was finished. At a hearing on August 3, 2016, Plaintiff reported that Ms. McNeely's deposition revealed that two such files existed, and sought to have Defendants produce those files. (Dkt. 166 at 4:25-5:9.) The Defendants indicated they did not "expect problems" producing those items, but needed to discuss the matter with their client first. (Dkt. 166 at 5:16-20.) The Court indicated that it understood counsel's need to confer with her client, but noted that "[i]f you do have an objection, bring it to me immediately." (*Id.* at 6:7-8.) In the minute order following the hearing, the Court ordered the Defendants to produce those files, subject to any objections, which were "to be brought to the Court immediately by contacting chambers." (Dkt. 162.)

The Court did not hear anything from either party for two weeks. On August 17, 2016, the Plaintiff filed an objection to this Court's order of August 3, 2016; Defendants raised no objections during this time period, despite the Court's admonition that such objections be raised "immediately." Defendants filed a response to Plaintiff's objections on August 24, 2016, which included a footnote stating that "Defendants could not and would not have agreed to produce these files as they are clearly privileged and/or contain work product and the University has determined not to waive these two files." (Dkt. 168 at 2 n.1.) However, the Defendants did not raise this issue before Judge Kendall during the hearing on Plaintiff's objection, nor did the parties mention this dispute during a motion hearing held before this Court on August 26, 2016.

3

In fact, the issue was not brought to this Court's attention until the parties' joint submission of September 9, 2016, in advance of the discovery conference set for September 14, 2016.

Following the discovery hearing, the Court ordered briefing on the two issues described above. The Court has reviewed the parties' briefs and will take up the parties' arguments in turn below.

## DISCUSSION

**I. Ms. Jasti's Communications Are Not Protected by the Attorney-Client Privilege**

"In order for the attorney-client privilege to attach, the communication in question must be made: (1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; (4) in the context of an attorney-client relationship." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The party asserting the privilege bears the burden of showing that it applies and has not been waived. *Whitney v. Tallgrass Beef Co. LLC*, 2015 WL 3819373, at *2 (N.D. Ill. June 18, 2015). Plaintiff makes two argument to support his position that Ms. Jasti's communications with Mr. Rock and/or her children are protected by the attorney-client privilege: 1) Ms. Jasti had an attorney-client relationship with her children and Mr. Rock, and, therefore, the communications were privileged under the "common interest doctrine," or, alternatively, 2) Ms. Jasti's presence as a third party on communications with Plaintiff and his attorneys did not destroy the privilege.

**A. Attorney-Client Relationship**

On the first issue, the Court does not believe that Plaintiff has carried the burden of showing that there was an attorney-client relationship between Ms. Jasti and her children or Mr. Rock. As noted above, Ms. Jasti's testimony at her deposition was very clear that she was not represented by either her children or Mr. Rock, and that her communications with her children

4

were made in the context of their familial relationship, not an attorney-client relationship. Notably, Ms. Jasti was represented by Plaintiff's current counsel at her deposition; Ms. Jasti's counsel objected to certain questioning on the basis of privilege, but did not specify the grounds for that objection (*i.e.*, whether the privileged was being asserted on Ms. Jasti's behalf or on behalf of Plaintiff), and failed to instruct Ms. Jasti not to answer questions on that basis.[1] The Court does not give credence to Plaintiff's argument that Ms. Jasti did not fully understand the questioning at her deposition regarding her representation. The Court notes again that Ms. Jasti was represented by counsel at all times during her deposition, and no interpreter was present. If Ms. Jasti truly could not understand the questions being posed, she had avenues to ensure that she could understand, but did not avail herself of any of those options.

In an attempt to combat Ms. Jasti's damaging deposition testimony on this issue, Plaintiff has attached a statement from Ms. Jasti to his filing, claiming that her children "have both been advising us, as our attorneys, throughout the litigation," and that she played an important role for Plaintiff in his communications with Mr. Rock. (Dkt. 192-2 at ¶¶4-9.) The Court is not persuaded by this attempt to provide an *ex post facto* reversal of Ms. Jasti's clear deposition testimony regarding the nature of her relationship with her children and Mr. Rock as it relates to this case. Plaintiff provided no evidence of an attorney-client relationship between Ms. Jasti and her children or Mr. Rock, other than the assertion contained in her statement; there is no engagement letter or any other indicia of an attorney-client relationship that one would expect. In short, Plaintiff has not met his burden of proving an attorney-client relationship between Ms. Jasti and her children or Mr. Rock. Therefore, any statements made by Ms. Jasti to those individuals were not in the context of an attorney-client relationship, and are not privileged.

---

[1] This failure is particularly odd because attorney-client privilege is one of the very few objections that allow an attorney to instruct a witness not to answer a question at a deposition. *See* Fed. R. Civ. P. 30(c)(2).

### B. The Common Interest Doctrine

Furthermore, even if there were an attorney-client relationship, the common interest privilege would not apply in this case. The common interest doctrine "allows attorneys representing different clients with identical interests to share *otherwise privileged* information without a resultant waiver," and "generally involves individuals represented by separate counsel, not, as here, by the same lawyer." *McCullough v. Fraternal Order of Police*, 304 F.R.D. 232, 239 (N.D. Ill. 2014) (emphasis in original). Plaintiffs brief is not entirely clear regarding how the common interest doctrine would apply in this case. If Plaintiff is simply arguing that Ms. Jasti has a common interest with the Plaintiff because it is important to both of them that Plaintiff prevail in the instant law suit, this Court has found no case that bends the common interest doctrine to such an extreme definition.[2] If the argument is that Ms. Jasti and Plaintiff were both represented by their children and Mr. Rock, the common interest doctrine would not apply because Ms. Jasti and Plaintiff were not represented by different lawyers. It is possible that the joint lawyer doctrine might apply. *See McCullough*, 304 F.R.D. at 237-38. However, Plaintiff has not presented any argument on that doctrine, and, therefore, has not met his burden to prove that the privilege applies. As such, the Court rejects the Plaintiff's argument that the common interest doctrine applies.

### C. Presence of Third Parties During Attorney-Client Communications

Ordinarily, "statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential, because the presence of a third person is normally unnecessary for the communication between the client and his attorney." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th

---

[2] Plaintiff cited *DeGeer v. Gillis*, 2010 WL 3732132 (N.D. Ill. Sept. 17, 2010) in support of his argument. However, in that case, the wife was also a client of the attorney. *Id.* at *7. This is a crucial difference between the *DeGeer* case and the instant suit, where Ms. Jasti was not a client of the relevant attorneys.

Cir. 2007). However, an exception to this general rule exists where "that third party is present to assist the attorney in rendering legal services." *Id.* at 490-91. "This exception applies to both agents of the attorney, such as paralegals, investigators, secretaries and members of the office staff responsible for transmitting messages between the attorney and client, and to outside experts engaged 'to assist the attorney in providing legal services to the client, such as accountants, interpreters or polygraph examiners.'" *Id.* at 491 (quoting 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 183 at 312 (2d ed. 1994)). The exception also applies to agents of the client, not only agents of the attorney. *See Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 529 (N.D. Ill. 2011). However, "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *See LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 961 (N.D. Ill. 2009) (quoting *United States v. Ackley*, 169 F.3d 136, 139 (2d Cir. 1999)).

Plaintiff argues that Ms. Jasti's presence on communications between Plaintiff and his lawyers does not destroy the privilege because she "has driven [Plaintiff] to all meetings with attorneys in this matter," and "has also been extremely helpful to counsel in communicating with Dr. Rao, locating and transmitting documents to his counsel, filling in factual gaps when Dr. Rao cannot recall a relevant incident, typing documents for Dr. Rao, providing information about the family's finances, conducting internet research on issues and parties in the case, among other things." (Dkt. 192 at 3.) The Court does not believe that Plaintiff has carried his burden of proving that Ms. Jasti's role in this litigation is the type that preserves the privilege despite her third party status. This Court's review of the case law in the Seventh Circuit suggests that the privilege protects communications with third parties when the third party is an agent, employee,

7

or outside expert retained for the purposes of litigation. *See, e.g., Stopka*, 816 F. Supp. 2d at 522 (party's accountant and financial advisor), *LG Electronics*, 661 F. Supp. 2d at 961-63 (discussing the *de facto* employee exception), *Heriot v. Byrne*, 257 F.R.D. 645, 652 (N.D. Ill. 2009) (client's outside book-keeper, accountant, and accountant's assistant). While the exception appears to be flexible, the Court has found no case law that would stretch the exception to reach Ms. Jasti's role in this case.

In *Jenkins*¸ the only case potentially applicable here, the relevant third party was "the police liaison officer for the City and president of the Milwaukee Police Association" who "play[ed] the same role as would a paralegal in a law office, a secretary, or anyone else connected with the office." 487 F.3d at 486-87, 491. The third party was present during a meeting between a police officer and an attorney appointed by the police officers' association "solely to assist [the attorney] as he prepared to represent" the police officer. *Id.* at 491. Additionally, the third party was able to provide "expert advice on the rules and procedures of the [police] department" that was necessary to assist the attorney in gathering information. *Id.* at 490. Even though the third party was not an employee of the attorney, the third party was more akin to a *de facto* employee or an expert necessary to assist the attorney with the case. Therefore, the Seventh Circuit upheld the district court's ruling that the third party's presence at the meeting did not destroy attorney-client privilege. *Id*. at 491.

The Court has found no case in this circuit where the privilege has extended to family members of parties who are primarily assisting with basic ministerial and administrative tasks, which appears to Ms. Jasti's role in this litigation.[3] The Court accepts that Ms. Jasti was important to the litigation, but that alone is not enough to preserve the privilege. *See LG*

---

[3] The cases cited by Plaintiff to support his argument are state court decisions from New York and Rhode Island that are not binding on this Court. The Court does not find these cases' reasoning persuasive, and relies on the case law developed in the Seventh Circuit on this issue to reach its decision.

*Electronics*, 661 F. Supp. 2d at 961.  While it is possible that Ms. Jasti was acting as an agent of the Plaintiff, neither the factual recitation nor the legal arguments in Plaintiff's brief present any such assertion.  Nor has Plaintiff argued that Ms. Jasti acted as an interpreter or expert that was necessary for Plaintiff's counsel to provide adequate and meaningful legal advice.  Given Plaintiff's burden to show that the privilege should apply, and the Seventh Circuit's admonition that the attorney-client privilege should be construed narrowly,[4] the Court cannot find that Plaintiff's communications with his lawyer in the presence of Ms. Jasti were made "in confidence."  As such, they are not protected by the attorney-client privilege.  Ms. Jasti is ordered to produce the documents sought in the Defendants' third-party subpoena on or before October 24, 2016.[5]

## II. The Defendants Have Not Met Their Burden of Showing that the Investigative Files Are Protected by the Work Product Doctrine.

Plaintiff seeks two investigative files relating to internal investigations of University of Illinois employees that were conducted by outside counsel.  After the September 14, 2016 discovery conference, the Court noted that "the Court understands that many of the materials relating to the internal investigation by outside counsel may be protected from discovery by the attorney-client privilege or the work product doctrine. *See Sandra T.E. v. South Berwyn School District* 100, 600 F.3d 612 (7th Cir. 2010)." (Dkt. 189.)  As such, the Court sought briefing on issues relating to the work product doctrine, and whether Plaintiff had a substantial need for these documents notwithstanding any work product claims.

"The work-product doctrine protects (1) 'documents and tangible things otherwise discoverable' (2) 'prepared by or for another party or by or for that other party's representative'

---

[4] *See Jenkins*, 487 F.3d at 490.
[5] Because the Court finds that communications that involved Ms. Jasti were not privileged, the Court need not reach the waiver issue raised in the parties' briefs.

9

(3) 'in anticipation of litigation or for trial.'" *Christman v. Brauvin Realty Advisors, Inc.,* 185 F.R.D. 251, 255 (N.D. Ill. 1999). "[T]he burden of establishing the elements of the work-product doctrine is on the party claiming protection." *Id.* Federal Rule of Civil Procedure 26(b)(5)(A) also requires a party withholding documents on the basis of attorney-client privilege or the work product doctrine to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim." "An assertion of privilege therefore must be made on a document-by-document basis." *In re Grand Jury Proceedings,* 220 F.3d 568, 572 (7th Cir.2000).

First, Defendants argue that the investigative files need not be produced because Plaintiff's written discovery did not request the files. (Dkt. 193 at 8-9.) But this Court overruled that objection on August 3, 2016, when it ordered that Defendants produce the investigative files. The Court ordered that Defendants raise any objection to producing all or part of the files "immediately by contacting chambers." (Dkt. 162.) The Court, as it has done repeatedly throughout its management of this case, reminded the parties that time was of the essence due to a firm discovery cut-off of September 7, 2016. As we discuss below, despite this clear admonition, Defendants did not make any objection to this Court until the parties filed a joint submission on September 9, 2016 – two days after the close of discovery.[6] At the discovery

---

[6] In their submission, Defendants claimed that they "had no choice but to address" the production of the investigative files before Judge Kendall because Plaintiff had filed an objection to this Court's August 3, 2016 Order, and this Court was on vacation for a portion of August 2016. First, the Court notes that it gave Defendants a very clear mechanism to raise any objections before this Court. The Court specifically noted that its vacation "shouldn't stop [Defendants] from alerting my staff that you have a need for me to resolve [any objections] because I will do so as soon as I get back," and noted that the Court's law clerk would research any issues raised by the Defendants to ensure an efficient resolution of the issues. (Dkt. 166 6:5-24.) In fact, the Court ordered a transcript of that hearing and met with the Court's law clerk (during the law clerk's paternity leave) to guarantee that any issues presented during the Court's vacation could be resolved as quickly as possible. Second, this argument overlooks the fact that Defendants had two weeks to identify any objections it might have had to producing the investigative files. That should have been ample time to determine that there was a potential work product claim,

10

conference which followed, Defendants asserted a work product privilege over the two investigative files.

The Court must now decide whether all the materials in the investigative files are, in fact, attorney work product. The most illuminating case on this issue is *Sandra T.E. v. South Berwyn School District 100*, 600 F.3d 612 (7th Cir. 2009). In that case, the defendant school district hired a law firm to perform an internal investigation of a teacher who had been accused of molesting students. *Id.* at 615. The victims and their families sued the school district and the principal of the school, and issued a subpoena seeking discovery regarding the contents of the law firm's internal investigation file. *Id.* at 616. After a motion to quash was denied, the law firm turned over "more than a thousand pages of documents," "[b]ut the firm withheld its notes and memoranda from the witness interviews and other internal legal memoranda prepared in connection with the investigation." *Id*. After unsuccessfully seeking to compel production of the documents directly from the defendants, the plaintiffs served a second subpoena on the law firm; after briefing and a hearing, the district court ordered the law firm to produce the notes and internal memoranda. *Id*. at 617.

On appeal, the Seventh Circuit reversed the district court's ruling. The Seventh Circuit reasoned that the affidavits submitted by the law firm, the engagement letter produced by the law firm, and other evidence in the record demonstrated that the internal investigation was performed by attorneys in their roles as attorneys (as opposed to investigators), and, therefore, was protected by the attorney-client privilege and the work product doctrine. *Id.* at 620-22.

---

and bring it to this Court's attention before Plaintiff filed his objections. However, Defendant failed to do so. Finally, the objection that Defendants eventually did make can be found in a footnote to their response to Plaintiff's objections, and was not discussed in the substance of that filing or during the subsequent hearing before Judge Kendall. It is unclear whether that objection was properly raised at all before Judge Kendall, as the objection was never raised before this Court in the first instance. Moreover, there is an argument it was waived when Defendants failed to bring it up at the hearing before Judge Kendall. In any event, the first time this Court was alerted to the objection was in the September 9, 2016 joint submission.

Additionally, the Seventh Circuit held that the privilege had not been waived because the law firm (*i.e.*, the party with possession of the documents in question) had prepared a "proper privilege log adequately describing what it withheld." *Id.* at 623.

While there are many superficial factual similarities between that case and the instant suit – both cases involve internal investigations of public educational institutions performed by outside law firms relating to faculty wrongdoing – there are some crucial differences between the actions of the law firm in *Sandra* and Defendants in this case. First, the issue in *Sandra* was not whether the entire investigative file was work product; the law firm had turned over more than one thousand pages of its file already, and was only seeking protection over the type of internal memoranda and lawyers' notes that are at the very core of the work product doctrine. Conversely, the Defendants here are seeking to protect the *entirety* of its files, much of which likely does not contain the mental impressions of the attorneys performing the relevant internal investigations.[7] *See Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002) ("Factual information may not be withheld under the work product doctrine, but must be produced through interrogatories, depositions, or other discovery"). Despite the extensive briefing on this issue, Defendants have not attempted to differentiate between portions of the files which may be covered by the work product privilege and those that are not.

As *Sandra* makes clear, the party seeking to maintain protection on the basis of work product privilege must meet its burden of showing that the documents in question deserved protection. In that case, the law firm provided the court with affidavits and other evidence regarding the nature of the law firm's representation. Conversely, the Court here has not been provided with any evidence regarding the contents of the investigative files; Defendants have not

---

[7] For example, documents collected during the investigation would not contain any of the attorneys' mental impressions. Additionally, transcripts of any internal investigation interviews may not be protected by the work product doctrine. *See The Manitowoc Co., Inc. v. Kachmer*, 2016 WL 2644857, at *4 (N.D. Ill. May 10, 2016).

12

produced a single affidavit, an engagement letter, or even a general description of the documents that they seek to protect.[8] The Court has no way to determine whether the protection Defendants seek is appropriate, which is Defendants' burden as the party asserting work product protection. The Court recognized in its minute order that "*many* of the materials relating to the internal investigation by outside counsel *may* be protected from discovery by the attorney-client privilege or the work product doctrine." (Dkt. 189 (emphasis added).) The Court invited Defendants to attempt to meet their burden of establishing that any such materials deserved such protection, or identifying with specificity which documents they were protecting. Instead, Defendants made an unsubstantiated blanket claim of privilege over entire files.

Finally, hand in glove with the second issue, the party seeking to avoid discovery in *Sandra* produced a privilege log. "A timely and adequate privilege log is required by the federal rules, and the failure to serve an adequate and timely privilege log may result in a waiver of any protection from discovery." *See Miller v. City of Plymouth*, 2011 WL 1740154, at *4 (N.D. Ind. May 5, 2011) (citing *Babych v. Psychiatric Solutions, Inc.,* 271 F.R.D. 603, 608 (N.D.Ill.2010)). In fact, only a few months ago, this Court noted that the failure to list documents on a privilege log or adequately describe documents over which privilege or work product protection is claimed may result in a waiver. *See The Manitowoc Co., Inc. v. Kachmer*, 2016 WL 2644857, at *4 n.4 (N.D. Ill. May 10, 2016). The Court has not seen a privilege log regarding the investigative files either. Again, this failure leaves the Court completely unable to appropriately assess the validity of the Defendants' claims of work product.

---

[8] The Court notes that Defendants stated in their brief that "[t]o the extent that the Court determines that additional evidence is needed on this subject, Defendants are happy to provide a supporting affidavit." (Dkt. 193 at 10 n.7.) The Defendants should have done this in the first instance. This is why the Court ordered briefing and cited the *Sandra* case in its minute order doing so. As noted herein, Defendants had the burden to prove that the documents they seek to withhold are protected by the work product doctrine. They should have taken all of the necessary steps to do so in their filings. Their willingness to do so now is admirable, but does not excuse the failure to provide the necessary proof in a timely fashion.

In short, the Defendants have simply not provided either the Plaintiff or the Court with any of the information necessary to make an informed decision on whether the contents of the investigative files should be withheld from discovery. Instead, Defendant waited until the eve of the close of the discovery to make a claim of privilege over the entirety of two investigative files that have not been described in anything but the broadest possible terms. They did so despite knowing since at least mid-July 2016, that Plaintiff would likely seek discovery of these investigative files, and that the Court was likely to have to rule on this issue. From the record before this Court, the Defendants did not take any affirmative steps to review the investigative files at that time to determine which portions were protected and which were not.

Then, on August 3, 2016, this Court ordered the two investigative files to be produced, subject to the Defendants' objections, which were to be made "immediately." No objection was made during the two-week period that the case languished before the Plaintiff objected. A week later, Defendants first raised the objection to Judge Kendall in a footnote, but then inexplicably failed to raise the issue at the subsequent hearing on Plaintiff's objection. Even ignoring the fact that a weeks-long delay cannot reasonably be considered "immediate," the Court can assume that the Defendants determined at some point during that time period that it planned to make an objection to the production of the investigative files on the basis of privilege or the work product doctrine.[9] As soon as Defendants were aware of this issue, they should have contacted chambers; that is what "immediately" means. This would have given the Court ample time to

---

[9] It is unclear when Defendants realized that they had a potential objection to the production of the investigative files. According to their brief, "[c]ounsel for Defendants immediately began exploring the possible production of these files, including the associated privilege and work product issues, but had not yet completed their due diligence when Plaintiff file a Motion with Judge Kendall objecting to the August 3, 2016 Order." (Dkt. 193 at 12.) The Court has a difficult time imagining that a party exercising normal due diligence would take more than two weeks to determine that it was going to object to production on the basis of privilege.

14

work through the issues related to privilege in advance of the discovery cutoff date of September 7, 2016. By failing to do so, Defendants violated this Court's order of August 3, 2016.

The Federal Rules Civil Procedure places the burden on Defendants as the party seeking to protect the information to establish how and why the privilege applies. Given the imminent close of discovery, the Court gave the Defendants a chance to clearly articulate their position regarding any privilege they possessed by bringing any objections to the production of the investigative files before this Court "immediately." Defendants ignored this order. Discovery closed on September 7, 2016, and the Court will not give Defendants a further opportunity to do what they neglected to do in a timely fashion. The case must move forward. As such, the Court orders the Defendants to produce the investigative files to the Plaintiff on or before October 24, 2016.

Two notes of caution regarding this Order. First, the Court notes that these documents will be produced pursuant to the Confidentiality Order entered in this case.[10] As such, their use is limited to this litigation, and there is a small subset of third parties to whom the documents can be released. The Confidentiality Order also discusses the mechanisms for using this information at trial and in any public filings. Second, this ruling is limited to the discoverability of the investigative files. It is the province of the district court to determine the admissibility of these documents in any dispositive motion or at trial.

Even if the Defendant had carried the burden of proving that certain documents in the investigative files were protected by the work product doctrine, the Court believes that the Plaintiff has likely shown a "substantial need" for a large portion of the investigative files. Federal Rule of Civil Procedure 26(b)(3)(A) states that materials otherwise protected by the

---

[10] Should the parties wish to amend the Confidentiality Order to provide additional protection for these documents (such as Attorneys' Eyes Only protection), the Court will entertain such arguments on an appropriately filed motion.

work product doctrine "may be discovered if . . . the party [seeking discovery] shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." In *Sandra*, the Seventh Circuit rejected the plaintiffs' arguments that they had a substantial need to use the documents for impeachment purposes.[11] *See*, 600 F.3d at 622-23. However, in this case, the investigative files provide crucial information regarding comparator employees necessary to make Plaintiff's case-in-chief; namely, how did the University treat other employees whose ethics violations were referred to outside counsel for investigation. Moreover, the Court does not accept the Defendants' argument that other sources of information – such as Ms. McNeely's deposition or publicly available documents – are the substantial equivalent of the information contained in the investigative files. The files contain contemporaneous impressions of the relevant investigations that cannot be gleaned from sanitized public documents or from the heavily-lawyered deposition testimony of a University employee taken years after the investigations were conducted. However, the Court need not reach that issue here, as it does not believe that Defendants have met their burden of showing which documents in the investigative files are protected by the work product doctrine and which are not.

## CONCLUSION

For the reasons discussed above, the Court orders as follows: 1) Ms. Siva Jasti must produce all documents requested in Defendants' third party subpoena on or before October 24, 2016; and 2) Defendants must produce the two investigative files of ethics investigations that

---

[11] The use of the files in this case is also distinguishable from *Sandra*. In *Sandra*, the investigative files would have revealed mental impressions of the investigation relating to the wrongdoing that led to that very litigation. Here, the files relate to investigations that are unrelated to the Plaintiff's conduct, and are relevant only as comparators to Plaintiff's treatment by the University. Plaintiff's counsel's opinion and impressions will not be revealed by the discovery. As such, many of the underpinnings of the work product doctrine – allowing lawyers to work "free from unnecessary intrusion by opposing parties and their counsel" and avoiding disruption of "the orderly development and presentation of [an attorney's] case" – are not in play here. *See Eagle Compressor*, 206 F.R.D. at 478.

16

were referred to outside counsel on or before October 24, 2016.


**ENTER:**

**DATED:** 10/20/16

_____
**U.S. Magistrate Judge, Susan E. Cox**